UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FREDERICK LUSTER, on behalf of himself and all others similarly situated, | : : : : |
| Plaintiff, | : : |
| | : Civil Action File No. |
| v. | : : |
| DUNCAN SOLUTIONS, INC., a Wisconsin corporation, | : : : |
| | : |
| PROFESSIONAL ACCOUNT MANAGEMENT, LLC a Wisconsin limited liability company, and | : : : **Jury Trial Demanded** : |
| | : |
| PARK ATLANTA. LLC, a Georgia limited liability company, | : : : |
| Defendants. | : : : |

## CLASS ACTION COMPLAINT

1.  Plaintiff FREDERICK LUSTER ("LUSTER"), on behalf of himself and all others similarly situated, alleges defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by initiating non-emergency telephone calls using an automatic telephone dialing system to cellular telephone numbers without the prior express consent of the subscribers of those cellular telephone numbers.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1337 and 47 U.S.C. § 227(b)(3).

3. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear Plaintiff's state law claims as they are so related to Plaintiff's TCPA claim that they form part of the same case or controversy.

4. Venue in this District is proper because the Plaintiff resides here and the Defendants transact business here.

## PARTIES

5. Plaintiff is a natural person who resides in the Northern District of Georgia.

6. Plaintiff is a subscriber for his cellular telephone services for telephone number (404) 379-1970.

7. Defendant DUNCAN SOLUTIONS, INC. is a corporation organized under the laws of the State of Wisconsin. [Hereinafter said defendant is referred to as "DUNCAN."]

8. DUNCAN may be served by personal service on its registered agent at its registered office in Wisconsin, to wit: CSC-Lawyers Incorporating Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

9. Defendant PROFESSIONAL ACCOUNT MANAGEMENT, LLC is a limited liability company organized under the laws of the State of Wisconsin. [Hereinafter said defendant is referred to as "PAM."]

10. PAM may be served by personal service on its registered agent at its registered office in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

11. Defendant PARK ATLANTA, LLC is a limited liability company organized under the laws of the State of Georgia. [Hereinafter said defendant is referred to as "PARK."]

12. PARK may be served by personal service on its registered agent at its registered office in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

13. DUNCAN, PAM, and PARK all maintain a principal place of business at 633 W. Wisconsin Avenue, Suite 1600, Milwaukee, Wisconsin 53203. [Hereinafter DUNCAN, PAM, and PARK are collectively referred to as "DEFENDANTS."]

14. DUNCAN "is a full-service parking management company and a leading provider of parking management products and services to municipal and commercial clients worldwide, including parking meters, enforcement

solutions, citation processing, debt collections, and integrated on-street parking management services."

15. DUNCAN's motto is "*Parking and Enforcement from Start to Finish.*"

16. DUNCAN is in the business of managing the issuance and collection of parking citations for cities and municipalities throughout the world, including the City of Atlanta.

17. DUNCAN operates through a series of subsidiaries which are controlled by DUNCAN.

18. In or around 2009, the City of Atlanta retained DUNCAN for the purposes of privatizing parking enforcement.

19. Pursuant to agreement, DUNCAN pays the city of Atlanta a guaranteed sum to handle the issuance and collection or parking citations and in return is permitted to retain proceeds collected from parking meters and tickets in the City of Atlanta.

20. In order to effectuate its contract with the City of Atlanta, DUNCAN created PARK to manage the day to day operations of parking enforcement in the City of Atlanta.

21. When parking tickets are unpaid, DUNCAN begins its "AutoCOLLECT Debt Collection Service" in an attempt to collect outstanding payments.

22. DUNCAN operates its debt collection processes under the name of PAM.

23. DUNCAN uses similar processes for parking enforcement and collection for municipalities throughout the world as those it uses with the City of Atlanta.

24. Although it operates through subsidiaries, DUNCAN creates the policies and procedures by which those subsidiaries operate and has the ability to control the day to day operations of PAM and PARK.

25. Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTUAL ALLEGATIONS

26. In 2013, Plaintiff received telephone calls to his cellular telephone number in an attempt to collect parking citations issued by Defendants in the City of Atlanta.

27. When returning the telephone call, Plaintiff was informed that the caller was PAM calling to collect a citation issued by and allegedly owed to PARK.

28. When a PAM representative was asked about the relationship between PAM and DUNCAN, the PAM representative responded that "We are Duncan Solutions."

29. Defendants use collection software developed by Ontario Systems which has the capacity to predictively dial.

30. A brochure on DUNCAN's website advertises that DUNCAN uses "predictive dialer, outbound calling, dialing campaigns, [and] automated messaging" for its collection practices.
http://www.duncansolutions.com/pdfs/AutoCOLLECT.pdf [last accessed January 10, 2013 at 1:27 P.M.]

31. Defendants' dialing system and collection software has the capacity to store a database of telephone numbers and to dial those numbers at random or in sequential order.

32. Defendants program telephone numbers into their collection system which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone.

33. Defendants' dialing system has a setting referred to as "unattended messaging."

34. In a deposition in an unrelated case regarding the Ontario Systems collection software, a collection representative has testified regarding the system that "Unattended messaging means that we call a telephone number. If the dialer detects an answering machine or a connect, it'll leave a message. No

6

collector works in this pool; it is strictly dialed by the technology. It's a mode of dialing."

35. Defendants dialing system has the capacity to dial from a list of telephone numbers without human intervention.

36. Upon information and belief, the telephone calls to Plaintiff were initiated by Defendant PAM using the Ontario Systems collection software which had the capacity to predictive dial at the time of the calls.

37. PAM has access to all information and systems within PARK and DUNCAN's exclusive control, including: access to detailed information regarding the nature and pricing of parking citations and the processes used to collect them.

38. PAM has the ability to enter consumer information into PARK and DUNCAN's systems, as well as the authority to use the PARK and DUNCAN's trade name, trademarks and service marks.

39. PAM is authorized to collect on PARK and DUNCAN's behalf.

40. DUNCAN and PARK knew or reasonably should have known that PAM was using its dialing system to call persons alleged to owe unpaid parking citations allegedly due PARK and DUNCAN.

41. DUNCAN and PARK failed to take effective steps within their power to force the PAM to cease using an automatic telephone dialing system to call cellular telephones.

42. DUNCAN oversees and authorizes the actions of PAM and PARK and designs the business procedures whereby PAM collects parking citations issued by PARK.

43. DUNCAN and PARK have authorized PAM to collect unpaid traffic citations and have the ability, through their authorization, to oversee the conduct of PAM.

44. The calls were made by PAM with the actual or apparent authority of DUNCAN and PARK.

45. DUNCAN and PARK have ratified the collection processes of PAM, including the use of its predictive dialing software, by creating and hiring them to perform these functions, and knowingly accepting revenue generated through autodialed calls.

46. Moreover, defendants DUNCAN and PARK are liable for these calls because they owed plaintiff a duty not to invade his privacy and create a private nuisance in violation of federal law. It is impermissible to ask a third party (or affiliate) to perform actions in dereliction of such duty.

47. Upon information and belief, each of these defendants actively participated in formulating and implementing the collection strategy for parking tickets, including the use of automatic dialers.

48. Plaintiff never provided permission or consent for Defendants to make the telephone calls to his cellular telephone number.

49. The defendants knew about the TCPA before they made the calls to plaintiff and the class, but made these autodialed calls to cell phones in spite of such knowledge. The telephone calls were intentionally, willfully and knowingly initiated in order to obtain payment on delinquent parking citations.

50. The telephone calls were not initiated by accident or mistake.

## CLASS ACTION ALLEGATIONS

51. This action is brought on behalf of a class defined as (i) all subscribers of cellular telephone numbers (ii) to which the Defendants initiated telephone calls (iii) using its Ontario Systems dialing software (iv) in an attempt to collect a parking citation issued in Atlanta, Georgia, (v) in the four year period preceding the filing of this action; (vi) the following persons are excluded from the class: any person who provided his phone number to

defendant or the creditor with respect to the parking ticket transaction that led to the alleged debt owed.

52. The exact size of the class is information within the exclusive knowledge of the defendants.

53. The class is so numerous that joinder of all members is impractical.

54. The allegation of the previous paragraph is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  This allegation is based upon the following information: 1) Plaintiff's counsel knows of multiple persons who have received such calls; 2) Plaintiff himself received such calls indicating Defendant's did not scrub to remove cellular telephone numbers; 3) the sheer number of parking tickets issued by Defendants in the City of Atlanta and the revenue reportedly generated therefrom and 4) Defendants' utter disregard for the TCPA as evidenced by a prerecorded message which fails to adhere to the identification requirements set forth in 47 U.S.C. § 227(d) and 47 C.F.R. § 64.1200(b).

55. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  The principal issues are:

      a.      Whether Defendant's dialing system constitutes an automatic telephone dialing system under the TCPA and/or the FCC's rules;

      b.      Whether the telephone calls were made knowingly or willfully; and

      c.      Whether the TCPA violations in this case were committed in bad faith under Georgia law.

56. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

57. All of the class members were called in an attempt to collect a parking citation.

58. None of the class members engaged in any type of consensual transaction with the Defendants which would have generated any opportunity for consenting to the calls.

59. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling TCPA robocall actions and class actions. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

60. Certification of the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

61. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

    a. The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

62. Plaintiff requests certification of a hybrid class pursuant to Fed. R. Civ. P. 23(b)(2) and (3) for monetary damages and injunctive relief.

## CAUSES OF ACTION

### COUNT ONE: TELEPHONE CONSUMER PROTECTION ACT

63. The acts of Defendants constitute violations of the Telephone Consumer Protection Act.

64. Defendants' violations of the TCPA include, but are not limited to, the following:

> Making and/or initiating telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii).

65. As a result of Defendants' actions, Plaintiff and the members of the class are entitled to an award of actual damages or $500.00, whichever is greater, for each such violation and an injunction prohibiting future conduct in violation of the TCPA.

66. Defendants' violations were committed willfully and knowingly. Plaintiff, on behalf of himself and the class, requests the court treble damages pursuant to 47 U.S.C. § 227(b)(3).

67. Plaintiff requests, on behalf of himself and the class, that Defendants be enjoined from future TCPA violations.

## COUNT TWO: BAD FAITH ATTORNEYS FEES

68. Defendants have acted in bad faith, been stubbornly litigious and/or caused the Plaintiff unnecessary trouble and expense. Plaintiff requests an award of the expenses of litigation, including a reasonable attorney's fee, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of himself and the class he seeks to represent against Defendants, as follows:

    A.    Certification of this matter to proceed as a class action;

    B.    Damages pursuant to 47 U.S.C. § 227(b)(3)(B);

    C.    Treble damages pursuant to 47 U.S.C. § 227(b)(3);

    D.    Injunctive relief 47 U.S.C. § 227(b)(3)(A) preventing future conduct by the defendants in violation of the TCPA;

    E.    Attorney's fees and litigation expenses of suit pursuant to O.C.G.A. § 13-6-11; and

    F.    Costs of this Action pursuant to Fed. R. Civ. P. 54; and

    G.    Such further and additional relief as the court deems just and proper.

Plaintiff herein demands a trial by jury on all issues so triable.

Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by:    /s/ Justin T. Holcombe
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
P.O. Box 1478
331 Washington Ave.
Marietta, GA 30061-1478
770 / 427-5600
404 / 601-1855 fax

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
108 East Ponce de Leon Avenue
Suite 204
Decatur, GA 30030
404 / 373-1970
404 / 601-1855 fax

**BURKE LAW OFFICES, LLC**

Alexander H. Burke
*Application Pro Hac Vice forthcoming*
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

ATTORNEYS FOR PLAINTIFF

15