UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FREDERICK LUSTER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DUNCAN SOLUTIONS, INC., *et al*, <br><br> Defendants. | Civil Action File No. <br> 1:14-cv-00112-AT |

**MOTION FOR ATTORNEYS FEES AND LITIGATION EXPENSES
WITH SUPPORTING MEMORANDUM OF LAW**

Plaintiff, FREDERICK LUSTER ("Plaintiff"), through counsel and pursuant to Fed. R. Civ. P. 23(h), moves this Court for an award equal to the "benchmark" twenty-five percent of this common fund, plus out-of-pocket costs not to exceed $20,000. Plaintiff also requests that the Court approve a service award of $10,000 for plaintiff Frederick Luster. In support of this motion, plaintiff respectfully states:

On January 14, 2014, Plaintiff filed a class action lawsuit asserting class claims against Defendants under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (hereinafter referred to as the "TCPA"). Specifically, Plaintiff alleged that Defendants violated the TCPA by using an automatic

1

telephone dialing system or an artificial or prerecorded voice to make telephone calls cellular subscribers.

The parties engaged in settlement negotiations and eventually settled the claims with the assistance of the Hon. Patrick E. McGann (ret.) in Chicago, Illinois as mediator. *See Doc. 25*.[1] After heated, arms-length discussions, the parties reached a settlement in principle. Exhibit A, Declaration of Alexander H. Burke, ¶ 13, Exhibit B, Declaration of James M. Feagle, ¶¶48-51 . Several months later, after numerous subsequent discussions surrounding documentation of the settlement, on September 30, 2014, the parties submitted a request for preliminary approval of this settlement. *Doc. 25*. In consideration of preliminary approval, the Court held a telephonic hearing, where the Court questioned the lawyers and made alterations to the mailed notice. Shortly thereafter, on November 7, 2014, the Court entered an order ("Preliminary Approval Order") giving preliminary approval to the settlement.

As part of the Preliminary Approval Order, the Court also scheduled a final fairness hearing for April 16, 2015 at 3:00 PM to determine: (a) whether the

---

[1] The parties asked Judge McGann to assist in settling this case because of his extensive experience presiding over, and mediating, TCPA class actions as a trial judge in the Circuit Court of Cook County. Juge McGann has presided over 160 TCPA class actions during his 22 year judicial tenure. http://www.adrsystems.com/neutral/hon-patrick-e-mcgann-ret/

applicable prerequisites for settlement class action treatment under Federal Rules of Civil Procedure 23(a) and (b) are met; (b) to determine whether the Settlement is fair, reasonable and adequate, and should be approved by the Court; (c) to determine whether the judgment as provided under the Settlement Agreement should be entered, including a bar order prohibiting Settlement Class Members from further pursuing claims released in the Settlement Agreement; (d) to consider the application for an award of attorneys' fees, costs, and expenses of Class Counsel; (e) to consider the application for incentive awards to the class representatives; (f) to consider the distribution of the Settlement Benefits under the terms of the Settlement Agreement; and (g) to rule upon such other matters as the Court may deem appropriate. *Doc. 27, pp. 10-11*.

The proposed class action settlement provides for Defendants to make a "common fund" payment of $3,125,000.00 for the benefit of the class, which is comprised of individuals associated with 889,512 distinct cellular phone numbers. *Doc. 25-1, p. 5-7, ¶ 10.35*. Pursuant to the Settlement Agreement, Preliminary Approval Order, and Fed. R. Civ. P. 23(h), Plaintiff now makes this application for an award of attorneys' fees, costs, and expenses of Class Counsel in an amount to be determined at the Final Approval Hearing.

**SUPPORTING MEMORANDUM OF LAW**

The Settlement Agreement with Defendants provides for payment of class counsel's attorneys fees, litigation expenses and costs to come from the "Common Fund." *Doc. 25-1, p. 5, ¶ 10.35.* In this case, Plaintiff seeks an award of attorneys' fees in the amount of $781,250.00 (25% of the fund) as well as an award of actual, out-of-pocket, costs and expenses not expected to exceed $15,000.

**I.     Attorneys Fees Should be Calculated
        as a Percentage of the Common Fund.**

"It is well established under case law in the 11th Circuit that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). The 11th Circuit has held that "attorneys' fees awarded from a common fund <u>shall</u> be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (emphasis added) (identifying upper limit of compensation from common fund as 50%).

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* "The majority of common

4

fund fee awards fall between 20% to 30% of the fund." *Id.* (internal citation omitted). "In an effort to provide appellate courts a record for review of attorneys' fee awards, district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775.

In the years since *Camden I*, it has come to become "well-settled law from [the 11th Circuit] that 25% is generally recognized as a reasonable fee award in common fund cases." *Faught v. American Home Shield Corp.*, 668 F. 3d 1233, 1243 (11th Cir. 2011) (approving a common fund fee of 25% without reference to lodestar or *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), but considering the "*Johnson* factors" in determining separate fee payment for non-monetary relief). Only "[w]here the requested fee exceeds 25%, the court is instructed to apply the twelve *Johnson* factors." *Id.*

As in *Faught*, Plaintiff herein requests an award of fees in the benchmark amount of 25%, so a *Johnson* factor analysis is not required. And, unlike in *Faught*, Plaintiff here does not seek additional fees for nonmonetary relief, despite the fact that such relief was obtained in this case by virtue of the Defendant's voluntary cessation of the conduct which formed the basis of this litigation. Plaintiff requests this court approve an award of attorneys fees from the common

5

fund in the amount of $781,250.00, which represents the 25% benchmark generally recognized as a reasonable fee by the 11th Circuit. *Faught v. American Home Shield Corp.*, 668 F. 3d 1233, 1243 (11th Cir. 2011).

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007); *see also Wolff v. Cash 4 Titles*, No. 03-22778, No. 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) *report and recommendation adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012). And while this Court has a duty to determine the reasonableness of the requested fee percentage, "the Court should give substantial weight to a negotiated fee amount, assuming that it represents the parties' best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-95 (N.D.Ga. 2001); s*ee also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial

6

deference"); *see, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (affirming fee award of 33 1/3% of common fund, using 30% as starting benchmark).

"An award of attorneys' fees at the market rate is necessary to provide attorneys the incentive to take ... class actions, and without such an incentive, [consumers] would be faced with substantial difficulties finding counsel willing to undertake meritorious, but high-risk, litigation." *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D.Fla. Sept. 26, 2012).[2] There was real risk in filing this case. Aside from the defendant's questionable ability to pay any more money than plaintiff has obtained through this settlement, this Court, or the Eleventh Circuit, would refuse to certify the class because of individualized issues relating to the issue of consent. Duncan indicated to plaintiff's counsel on numerous occasions that individualized issues surrounding consent constituted a significant class certification defense, and plaintiff cannot discount the possibility that an opposition

---

[2] The market rate for attorney's fees in TCPA cases falls between approximately 23% to one-third of the total common fund. *Espinal v. Burger King Corp.*, Case No. 1:09-cv-20982 (S.D. Fla.) (33% of $510,000 made available to class awarded), *Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-02414 (M.D. Fla.) (22.6% awarded); *Martin v. Dun & Bradstreet, Inc.*, 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of defendants' total payout); *Cummings v. Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (one-third); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (one-third); *Hanley v. Fifth Third Bank*, Case No. 1:12-cv-01612 (N.D. Ill.) (one-third); *Steinfeld v. Discover Financial Services*, Case No. 3:12-cv-01118 (N.D. Cal.) (25%); *Satterfield v. Simon & Schuster*, Case No. 4:06-cv-02893 (N.D. Cal.) (25%).

to class certification would have been successful. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citations omitted); compare, e.g., *Manno v. Healthcare Revenue Recovery Group, LLC,* 289 F.R.D. 674 (S.D.Fla. 2013) (granting class certification), with *Fitzhenry v. ADT Corp,* 2014 WL 6663379 (S.D.Fla. Nov. 4, 2014). If Duncan were able to present convincing facts to support its position, as Duncan had suggested, the Court could have refused to certify the Class, leaving plaintiff to only pursue his individual claims. Instead, "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted).

Moreover, the Federal Communications Commission is currently considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against robocalls like the ones at issue in this case. And although Class Counsel actively advocates in the FCC in favor of consumers, the process can be quite unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that

facsimile advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing retroactive immunity for violators that file petitions with the FCC; a wholly unexpected and incongruous result from the perspective of plaintiff's counsel. http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf. The FCC issued several orders during the pendency of this case relating to the TCPA, any one of which could have easily rendered this lawsuit worthless.

Finally, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members. Courts therefore have appropriately recognized the risk incurred by plaintiff's counsel when they commit to contingent work, and the effect such a commitment can have on their ability to accept other work. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983).

Here, class counsel have obtained a substantial benefit for the class: a non-reversionary $3,125,000 settlement. The settlement provides class members with notice that they may have a potential TCPA claim, and a choice as to whether they wish to take guaranteed money through the settlement, or exercise their right to

9

exclude themselves and undertake the risk, responsibility and expense of trying to possibly obtain more. Without this settlement, the vast majority of class members' claims would expire into nothing upon the running of the statute of limitations, unaware that they may have recovered substantial funds as a result of telephone calls received on their cell phones.

In sum, this settlement provides real monetary relief, and the lawsuit provided the deterrence necessary for Duncan to stop using the challenged equipment to make collection calls.

## II.   The Court Should Approve Counsel's Costs and Expenses.

The Settlement Agreement provides for class counsel to be reimbursed for costs and the expenses of litigation from the settlement fund. *Doc. 25-1, pp. 9-10, ¶ 13.5*. As of the filing of this motion, Plaintiff's counsel has expended a total of $7,057.47. Exhibit A at ¶15 (stating that Burke Law Offices, LLC costs to-date are $4,306.52); Exhibit B at ¶ 53 (stating that Skaar & Feagle, LLC's costs to-date are $2,750.95). These costs, which are separate and apart from the cost of notice and administration, were expended for the benefit of the class and should be reimbursed in full, pursuant to the terms of the Settlement Agreement. Fed.R.Civ.P. 23(h) (permitting counsel to petition for nontaxable costs); *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983) ("[W]ith the

exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."). Plaintiff's counsel do not expect costs after final approval to exceed $10,000.

### III. The Court Should Approve the Requested Service Award.

Finally, the Court must consider whether to approve the requested $10,000 incentive award to the named Plaintiff, Frederick Luster. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D.Ga.2001) (approving very large incentive awards); see also *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1218-19 (S.D.Fla. 2006) (collecting cases); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs). Courts within the Eleventh Circuit frequently approve incentive awards. See e.g. *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 432 (11th Cir. 2012) (unpublished)

(awarding $10,000 incentive award); *Su v. Electronic Arts, Inc.*, 2006 WL 4792780, *5 (M.D.Fl. 2006).

Here, in further support of approving the $10,000.00 incentive award for Mr. Luster, the facts show that the incentive award is not substantially enhanced from the individual award that Mr. Luster could have recovered had he elected to pursue his case individually.  Duncan made a total of six calls to Mr. Luster, which would have resulted in a maximum net individual award of $9,000.00 if plaintiff had prevailed at trial. Exhibit C at ¶ 9; s*ee Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013) (criticizing class representative award that was less than amount plaintiff would be entitled to at trial as a "disincentive award"). Moreover, Mr. Luster has invested a significant amount of his time in pursuing this matter as a class in consulting with counsel and preparing for and participating in the mediation of this matter.  Id. at ¶¶14-15. For these reasons, the Court should approve an incentive award of $10,000 to the named class representative, Frederick Luster.

## III.   CONCLUSION

WHEREFORE, for the reasons set forth above, and pursuant to Fed. R. Civ. P. 23(h), the Plaintiff respectfully requests that the Court award class counsel attorneys fees in the amount of $781,250.00 and costs in an amount equal to the

actual out-of-pocket costs of Class Counsel, not to exceed $10,000, from the common fund. Plaintiff also requests that the Court approve a $10,000 service award for the class representative Frederick Luster.

SKAAR & FEAGLE, LLP

By:     /s/ Justin T. Holcombe
       Justin T. Holcombe
       Georgia Bar No. 552100
       Skaar & Feagle, LLP
       P.O. Box 1478
       Marietta, Georgia 30061-1478
       Telephone: 404-373-1970
       *Attorneys for Plaintiff*

       Alexander H. Burke, admitted *pro hac vice*
       ABurke@BurkeLawLLC.com
       Burke Law Offices, LLC
       155 N. Michigan Ave., Suite 9020
       Chicago, IL 60601
       (312) 729-5288
       (312) 729-5289 facsimile