**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FREDERICK LUSTER, | : | |
| on behalf of himself and all | : | |
| others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action File No. |
| v. | : | 1:14-cv-00112-AT |
| | : | |
| DUNCAN SOLUTIONS, INC., et al, | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |

**PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED
MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

Plaintiff Frederick Luster respectfully submits this memorandum in support

of final approval of the Settlement reached in this class action.  For the reasons set

forth herein and in the papers previously submitted, the Settlement is fair,

adequate, and reasonable, and in the best interests of the Class.  Accordingly,

Plaintiff respectfully requests that the Court grant final approval to the Settlement

by: (1) approving the proposed Settlement as fair, adequate, and reasonable for the

certified Class; (2) determining that adequate notice was provided to the Class; (3)

granting the requested attorneys' fees, costs, and incentive award; and (4) entering

1

the proposed Final Approval Order attached as Exhibit E to the Agreement.

The response to the Settlement has been overwhelmingly positive. There were 43,217 Valid Claim Forms submitted, amounting to an approximate 5.35% claims rate, within the range of similar class settlements. There were also only nine timely opt-outs, approximately 0.00111% of the Class. And of 807,556 Class Members, only <u>one</u> objected to the Settlement. None of the federal or state governmental agencies notified of the settlement under 28 U.S.C. § 1715 have asserted any criticism or objection. If final approval is granted, Class Members who submitted Valid Claim Forms will receive an estimated $39 each, well within the range of reasonableness compared to other class actions under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3). For the reasons stated herein, the Court should grant final approval of this Settlement.

## I.      FINAL APPROVAL SHOULD BE GRANTED.

"[B]efore approving a [proposed class action] settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984)); *see also* Fed. R. Civ. P. 23(e)(2). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the

class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litig. (4th)* ("*MCL 4th*") § 21.61, at 480 (2010).  However, in evaluating a proposed class settlement, "the court should be mindful of the judicial policy favoring settlement and cognizant that compromise is the essence of settlement."  *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (citations and quotations omitted).

### A.   The Settlement Is the Result of Informed, Arm's Length Negotiations Absent of Collusion.

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg & A. Conte, *Newberg on Class Actions* ("*Newberg*") § 11:41 (4th ed. 2002); *accord In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).  The Settlement satisfies this test.

To reach this Settlement, the Parties engaged in extensive arm's-length negotiations, which included an all-day, in-person mediation with the Honorable Patrick E. McGann (Ret.) and numerous subsequent informal negotiations between counsel for the Parties via phone and e-mail.  (DE 25, Mot. Prelim. App., p. 5-6.) Judge McGann presided over hundreds of TCPA class actions while serving on the

3

bench and has mediated the resolution of dozens more.  The Class representative, Frederick Luster, has remained involved throughout this litigation, including by working with Class Counsel to investigate and confer on the prosecution of his claims, reviewing and providing comments on documents, including the Settlement Agreement, and actively participating in the settlement negotiation process.  (DE 28, Pl.'s Mot. Fees, p. 12, Luster Decl. ¶¶ 14-15.)

The Parties' settlement discussions culminated in an Agreement that provides substantial relief to the Class. Under the Settlement, Defendant Duncan Solutions, Inc.,[1] its subsidiary Defendant Professional Account Management, LLC, and an additional non-party subsidiary, Law Enforcement Systems, Inc. (collectively, "Duncan"), have agreed to pay Settlement Benefits of $3,125,000, which will be distributed on a *pro rata* basis to each Class Member who submitted a Valid Claim Form after payment of any Settlement Administration Costs, Class Counsel's attorneys' fees and costs, and approved Class Representative Award. (Agreement ("Agr.") ¶ 10.35.) The Parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including those based on the TCPA.  (*See generally* DE 25-2, 25-3.)

---

[1]    The remaining defendant, Park Atlanta, LLC, was improperly named and may be dismissed from this action without prejudice.

The Settlement is the result of a thorough investigation.  As a condition of mediation, Plaintiff demanded and Duncan provided detailed information relating to, *inter alia*, Duncan's calling practices, call records, and dialer equipment, as well as information permitting the identification of the Class—information crucial for Plaintiff to evaluate class-wide damages.  (Burke Decl. ¶ 12, attached as Exhibit A.)  This information permitted Plaintiff to effectively negotiate on behalf of the Class, and ultimately achieve the exemplary Settlement for which approval is now sought.  (*Id.* ¶ 12.)  For these reasons, the Settlement is entitled to a presumption of fairness.

**B.      Class Members Received the Best Notice Practicable.**

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.  (DE 27 at 2.) This notice program has been fully implemented by independent Settlement Administrator Kurtzman Carson Consultants LLC ("KCC"). (Gardella Decl. ¶¶ 5-18, attached as Exhibit B.)

After receiving the Class Member List compiled from Duncan's records, KCC processed the data for adequate formatting and ran it against the National Change of Address database for increased accuracy, thereafter removing any

duplicates. (*Id.* ¶¶ 8-10.) On December 12, 2014, KCC mailed a postcard Short

Form Class Notice with Claim Form to each of the 807,556 names and addresses

associated with the Class. (*Id.* ¶¶ 10, 13.) Mailings that were returned

undeliverable were sent to any forwarding address. (*Id.* ¶¶ 14-15.) KCC also

created the settlement website containing the Long Form Notice, Claim Form,

Class Action Complaint (DE 1), Agreement (DE 25-1), Preliminary Approval

Order (DE 27), and Motion for Attorneys' Fees and Litigation Expenses (DE 28),

and other information relevant to the Settlement. (*Id.* ¶ 12.)[2] Class Members were

able to submit claims directly through the settlement website. (*Id.*)

The Class Notice provided to the Class informed them of, among other

things: (1) information about the Action, the Settlement, and the release; (2)

deadlines for Class Members to file a Claim Form, opt out of the Settlement, or

object to the Settlement; (3) the amount being sought by Class Counsel in

attorneys' fees and costs, and the proposed incentive award for Plaintiff; and (4)

the date and location of the Fairness Hearing.  Additionally, Duncan used KCC to

provide timely notice of the Settlement to all appropriate federal and state officials,

pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2).

(Gardella Decl. ¶¶ 6-7.)  None of those officials raised any concerns or objections.

---

[2]        *See also* www.DuncanTCPASettlement.com.

KCC has received a total of 43,217 Valid Claim Forms,[3] amounting to an approximate claims rate of 5.35%—within the typical range of other consumer class actions. (*Id.* ¶ 21); *see, e.g., Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("'[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.'") (quoting *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012). There were also an additional 131 Claim Forms that were received timely but not signed, and a further 1,097 Claim Forms that were untimely submitted. (Gardella Decl. ¶ 21.)[4] Thus, the notice program approved by this Court and implemented by KCC has successfully provided notice of these proceedings and of the matters set forth therein, including the Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

## C.     The Settlement Satisfies the Criteria for Final Approval.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d

---

[3]     The Claim Period ended on March 12, 2015.  (Agr. ¶ 10.5.)

[4]     While Plaintiff takes no position on the issue, Class Counsel notes that it is at the Court's discretion whether Class Members who submitted otherwise Valid Claim Forms either untimely or without a signature should receive Settlement Benefits.

489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") (citation omitted); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("'Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'") (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'") (citation omitted).

In determining whether a proposed settlement adequately protects the interests of the absent class members, courts generally consider the following: "(1) the likelihood of success at trial; (2) the range of possible recoveries; (3) ... the range of possible recoveries at which a settlement is fair, adequate and reasonable;

(4) the complexity, expense and duration of litigation; (5) the ... opposition to the settlement; and (6) the stage of the proceedings[.]" *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Of these so-called *Bennett* factors, however, "[b]y far the most important ... in evaluating the fairness and adequacy of a settlement is the likelihood and extent of any recovery from the defendants absent the settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993) (citations omitted).

Applied to this case, the relevant criteria support final approval of the Settlement.

### 1. *Likelihood of Success at Trial*

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. Here, Duncan vigorously defended its position throughout the litigation and negotiation process, and has expressed every intention of continuing a spirited defense, absent settlement, through class certification and trial. As such, Plaintiff's success at trial is in no way guaranteed, supporting final approval of the Settlement.

Although Plaintiff has thoroughly investigated the factual and legal bases for his claims, and has developed substantial evidence supporting his allegations that

Duncan violated the TCPA, one cannot ignore the significant risks in continuing the litigation had settlement not occurred.  Plaintiff's claims rest on the TCPA's prohibition against "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii); (Compl. ¶ 1, 51). This case therefore turns on, among other things, whether the calls were made using an "automatic telephone dialing system," and competing interpretations as to whether Class Members "consented" to receiving the calls at issue.

For Duncan's part, it has steadfastly denied that it violated the TCPA, and has asserted multiple affirmative defenses against Plaintiff's allegations, including consent for the calls and that the dialer used did not constitute an "automatic telephone dialing system" under the TCPA.[5] (Answer at 25-26.)  Complicating this issue, the FCC is currently considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against calls

---

[5]     *See* 47 U.S.C. § 227(a)(1) (defining an "automatic telephone dialing system" as "equipment which has the capacity ... (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers"); *but see Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1374 (S.D. Fla. 2014) (noting the FCC's conclusion that "the defining characteristic of an ATDS is 'the capacity to dial numbers without human intervention'") (quoting *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd 14014, 14092 (2003)).

like the ones at issue in this case. Some pending petitions—including petitions to limit the definition of an "automatic telephone dialing system" under the TCPA—could, if granted, require additional discovery or even significantly impede the ability to obtain class relief.  Although Class Counsel actively advocates in the FCC in favor of consumers, the process can be quite unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that facsimile advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing *retroactive immunity* for violators that file petitions with the FCC; a wholly unexpected and incongruous result from the perspective of Plaintiff's counsel.[6]

To add further complication, the calls at issue were not made by Defendant Duncan Solutions, Inc., itself, but by its subsidiaries Professional Account Management, LLC and Law Enforcement Systems, LLC. Duncan would likely have argued that this required Plaintiff to prove vicarious liability. *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13-2018, 2013 WL 5346430, at *1 (N.D. Ill. Sept. 23, 2013) (granting motion to dismiss without prejudice in TCPA class action alleging defendant's liability based on federal common law principles of agency).

---

[6]     *See*
http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.

Thus, absent settlement, Plaintiff and the class would face the possibility of receiving <u>no</u> relief under the TCPA.

Another risk Plaintiff faced going forward is that this Court would refuse to certify the class due to individualized issues of consent. Here, Duncan has contended that many of the numbers called during the class period were actually obtained from the consumer directly, implementing the TCPA's "prior express consent" exemption.[7] (Burke Decl. ¶ 12.) In the information exchange prior to mediation, Duncan produced exemplar recordings of interactions with putative class members to support its point.  As such, Plaintiff could not discount the possibility that an opposition to class certification based on this purported consent would have been successful.  "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citations omitted); *compare, e.g., Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (denying class certification), *with Manno v. Healthcare Revenue Recovery Grp.*,

---

[7]     *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013), *reconsideration denied* (May 30, 2013) ("[C]onsent is a defense to a TCPA claim.") (citation omitted).

*LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013), *reconsideration denied* (May 30, 2013) (granting class certification).[8]

   If Duncan were able to present convincing facts to support its position, the Court could have refused to certify a class, leaving Plaintiff with the ability to pursue his claims only on an individual basis.[9] Instead, settlement allows the Class to avoid the inherent risk, complexity, time, and cost associated with continued litigation. *See United States v. City of Miami, Fla.*, 664 F.2d 435, 439 (5th Cir. 1981) ("'The parties to litigation may be compromise and settlement not only save the time, expense, and psychological toll but also avert the inevitable risk of litigation.'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).

   Finally, there is a material risk of losing inherent in any jury trial.  Even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a

---

[8]   Supreme Court precedent clarifies that such concerns do not apply to class certification for settlement purposes, as distinct from litigation purposes.  In *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997), the Court noted that the manageability of a nationwide class, such as manageability issues arising from legal and factual variation, is not implicated in the settlement context, and need not be considered, because "the proposal is that there be no trial." *Id.* at 620.

[9]   Some courts also view awards of aggregate, statutory damages with skepticism and reduce them—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Harris v. Mexican Specialty Foods, Inc.*, 564 F. 3d 1301 (11th Cir, 2009) (acknowledging that statutory damages may be susceptible to a constitutional excessiveness review, but finding the District Court's resolution premature).

reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members.  Under the Settlement, Class Members avoid all of the risks and obstacles to recovery and will receive substantial benefits in a timely fashion.  Plaintiff and Class Counsel have negotiated an excellent settlement for the Class that requires Duncan to pay Settlement Benefits of $3,125,000. (Agr. ¶ 10.35.) Class Members can recover a *pro rata* portion of the Settlement Benefits after Settlement Administration Costs, Court-approved attorneys' fees and costs for Class Counsel, and any Court-approved Class Representative Award, through a straightforward claims process that only required completing a simple, one-page form. (Agr. ¶ 12.8, Exs. A, C.) A total of 43,217 persons submitted Valid Claim Forms during the Claim Period. (Gardella Decl. ¶ 21.) Assuming that the Court approves the fees and costs application of Class Counsel, and the requested Class Representative Award, each Class Member who submitted a Valid Claim Form is expected to receive approximately $39.[10]

The strength of the Settlement is further supported by Duncan's financial position. Duncan has produced financial information, including its most recent

---

[10]    ($3,125,000 Settlement Benefits - $650,000 maximum approximate Settlement Administration Costs - $781,250 requested attorneys' fees and $7,057.47 costs - $10,000 requested Class Representative Award) ÷ 43,217 Valid Claim Forms = $38.80.

14

audited financial statements, which strongly suggests that it could not fund a materially larger settlement. (*See generally* Flaherty Decl., attached as <u>Exhibit C</u>.) According to Duncan's Ernst & Young-audited financials, its net loss from operations exceeded $7.8 million for its most recent fiscal year.  (*Id.* ¶ 11.) The settlement amount exceeds Duncan's cash on hand, and the company does not generate sufficient cash flow or possess assets that could be feasibly liquidated to finance a settlement materially larger than the one negotiated by plaintiff. (*Id.* ¶¶ 6-16.) Finally, Duncan's insurer denied any coverage, based on a policy exclusion for claims brought under consumer protection laws. (*Id.* ¶ 17.)

   In light of the real risks outlined above combined with the fact that Plaintiff and Class Members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that puts money in Class Members' pockets immediately. The Settlement should be approved.

### 2.     *Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate*

   Analysis of the second and third *Bennett* factors—the range of possibly recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are often analyzed together. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007). However, "the Court is not

confined to the mechanistic process of comparing the settlement to the estimated recovery times a multiplier derived from the likelihood of prevailing on the merits.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 323 (N.D. Ga. 1993) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981)). "[T]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 ("That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair. 'In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'") (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974)).

Although the Settlement does not provide class members 100% of the amount they could receive if they sued on their own and prevailed, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate…. This is because a settlement must be evaluated in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350 (citations and quotations omitted).

Here, while Plaintiff believes he would ultimately prevail on liability, it would be extraordinarily difficult to obtain full monetary relief for Class Members due to the size of the Class and the volume of allegedly illegal calls they received. Given that the Class numbers 807,556 individuals and that Plaintiff's own experience in receiving several calls is typical, a monetary judgment for full statutory damages would have been ruinous for even the largest of companies, let alone Duncan.[11] *See A Fast Sign Co., Inc. v. Am. Home Svcs., Inc.*, 291 Ga. 844 (2009) (only 309,000 violations resulted in $459,000,000 award). Due to the size of the Class and scope of the damages, the $3,125,000 Settlement Benefits represents a fair compromise that recognizes the significance of the Class' claims and the practical ability of Duncan to make restitution. (Burke Decl. ¶ 12.) There is no sense in litigating for years, with the prospect of losing, in order to bankrupt the defendant without materially increasing what the class could likely recover.

Moreover, the minimum amount that each claiming Class Member is expected to receive under the Settlement fits well within the range of recovery

---

[11]     The TCPA provides for minimum statutory damages of $500 per violation, or up to $1,500 where the violation was "willfully or knowingly" committed. 47 U.S.C. § 227(b)(3). *See Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) ("[I]t is unlikely that a settlement would result in claimants receiving the full $500 or $1,500 per violation they might be entitled to under the TCPA.").

approved in other TCPA class cases. *See, e.g., Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-00248, Dkt. Nos. 116, 137 (S.D. Cal. 2008) (approving TCPA class settlement with claimant recovery of $40); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-01413, 2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) (approving TCPA class settlement with claimant recovery of $70); *Steinfeld v. Discover Fin. Servs.*, No. 12-01118, Dkt. Nos. 96 ¶ 6, 97 (N.D. Cal. Mar. 31, 2014) (approving TCPA class settlement with expected claimant recovery of $46.98); *In re Capital One TCPA Litig.*, No. 11-5886, 2015 WL 605203, at *5 (N.D. Ill. Feb. 12, 2015) (approving TCPA class settlement with claimant recovery of $34.60). This factor, therefore, supports approval of the Settlement.

### 3.     *Complexity, Expense, and Duration of Litigation*

The next *Bennett* factor to consider is the complexity, expense, and duration of litigation. As the Eleventh Circuit has noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 543 (S.D. Fla. 1988). In evaluating this *Bennett* factor, courts "'should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere

probability of relief in the future, after protracted and expensive litigation.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993) (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).; *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) ("Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law.") (citations and quotations omitted). This factor weighs in favor of approval.

In the absence of the Settlement, it is certain that the expense, duration, and complexity of protracted litigation would be substantial. Aside from the substantive, adversarial discovery (and related motion practice) the Parties would have needed to pursue absent settlement, the Parties have yet to file and brief motions for summary judgment, which would have comprised a major investment of time, energy, and capital in the form of expert witness fees, for both sides. Additionally, if the Court were to grant class certification or summary judgment in either side's favor, given the amount at issue, the losing side would likely seek relief from the Eleventh Circuit under Fed. R. Civ. P. 23(f). In either case, continued litigation of this matter would delay its resolution and inflict unnecessary additional expense on both sides. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "'it [is] proper to take the

bird in the hand instead of a prospective flock in the bush.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (quoting *Oppenlander*, 64 F.R.D. at 624). The complexity, expense, and duration of litigation thus weighs in favor of approving the Settlement.

### 4.    *Substance and Amount of Opposition to Settlement*

The next *Bennett* factor to consider is the substance and amount of opposition to the settlement. Here, out of all 807,556 Class Members, just nine opted out of the Settlement, and only one—a statistically insignificant 0.000124%—objected. This is strong circumstantial evidence that the Settlement is fair; indeed, settlements have been approved over the objections of a larger percentage of the class. *See Cotton*, 559 F.2d at 1331 ("A settlement can be fair notwithstanding a large number of class members who oppose it[,]" citing *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974), in which more than 20% of the class objected).

Further, the single objector to the Settlement—William J. Cruse, Jr.—only objects on the basis that his individual recovery should have been greater, given the particular circumstances of the calls to his phone.[12]  While Plaintiff and Class

---

[12]    Mr. Cruse's objection letter is attached hereto as <u>Exhibit D</u>.  He did not comply with the procedure required by this Court's order because he did not file it

Counsel sympathize with Mr. Cruse's frustration with unwanted calls, he was fully able to exclude himself from the Settlement and pursue any claims on an individual basis. Respectfully, Mr. Cruse fails to take into account that the proposed Settlement—like any settlement—is a compromise. *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003) ("Contrary to the objectors' expectations, the settlement is not a wish-list of class members that the Defendant must fulfill.... These and other objectors fail to understand that the form and amounts of benefit provided were arrived at as a result of hard-fought negotiations between experienced class action attorneys."). It seems highly doubtful that Duncan could pay any settlement that awarded individual class members an amount that would satisfy Mr. Cruse.

Moreover, while notice of the Settlement was sent to the U.S. Attorney General and the Attorneys General for all fifty states, none have voiced any opposition to the terms of the Agreement. (Gardella Decl. ¶¶ 6-7.) This lack of governmental opposition to the Settlement likewise militates in favor of its approval. *See Fresco v. Auto. Directions, Inc.*, No. 03-61063, 2009 WL 9054828, at *5 (S.D. Fla. Jan. 20, 2009) (noting, in addressing this *Bennett* factor and

---

with the Court. Dkt. No. 27 (Preliminary Approval Order) ¶¶ 16-18. He merely mailed it to counsel for the parties. Duncan has informed plaintiff that it objects to consideration of his objection on this basis.

approving settlement, that "no state or federal government officials have filed objections"). In all, the reaction of the Class has been overwhelmingly supportive of the Settlement. Accordingly, the substance and amount of opposition to the Settlement is miniscule in comparison to the support behind it, and thus weighs in favor of final approval.

### 5.   *Stage of Proceedings at which Settlement Was Achieved*

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007).  However, substantial formal discovery is not required, especially where the necessary information was gleaned informally without the wasted time and expense of written discovery requests, deposition testimony, and associated motion practice. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[T]he trial court may legitimately presume that counsel's judgment that they had achieved the desired quantum of information necessary to achieve a settlement is reliable.") (citation and quotations omitted); *accord Cotton*, 559 F.2d at 1332.

Here, the Agreement was reached over eight months into the litigation, and

not until the Parties had first engaged in significant informal discovery about the size of the putative class, range of damages, and the contrasting strengths of the Parties' claims and defenses. (*See, e.g.,* Burke Decl. ¶ 12.) Hence, there should be no question that, by the time the Settlement was reached, Plaintiff had enough information to sufficiently evaluate the strength of the claims of the Class and weigh the benefits of Settlement against continued litigation. The thorough investigation and evaluation of Plaintiff's legal claims, extensive informal discovery, and numerous arm's-length negotiations—including before a third-party neutral with substantial TCPA class experience—favors final approval of the Settlement.

### 6.    *The Opinion of Counsel*

"Courts often accord great weight to the opinions of counsel for the class in approving class action settlements." *Meyer v. Citizens & S. Nat. Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983)). In fact, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties ... [and], absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).  Here, Class Counsel—with substantial experience in TCPA

and other consumer class action litigation, and with the benefit of sufficient discovery (DE 25 at 5)—believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole.  (Burke Decl. ¶ 11.) This factor, therefore, supports approval of the Settlement.

## III.    CONCLUSION

The Settlement is fair, adequate, and reasonable, providing substantial benefits to the Settlement Class through not only prospective relief, but direct monetary payments of approximately $39 to each Class Member who submitted a Valid Claim Form. This is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation, and the Court should, therefore, approve the Settlement in its entirety.  Class Counsel also respectfully request that the Court award Class Counsel $781,250 in requested attorneys' fees—amounting to 25% of the Settlement Benefits—plus $7,057.47 in costs.  Class Counsel further requests that the Court approve a Class Representative Award of $10,000 to Plaintiff Luster.

WHEREFORE, Plaintiff Frederick Luster respectfully requests that the Court grant final approval of this class action settlement in its entirety.

Dated: April 2, 2015          Respectfully submitted,

FREDERICK LUSTER, on behalf of himself
and all others similarly situated

By:    /s/  James M. Feagle
       James M. Feagle (Ga. Bar No. 256916)
       SKAAR & FEAGLE, LLP
       2374 Main St., Suite B
       Tucker, GA 30084
       Telephone: (404) 373-1970
       Facsimile: (404) 601-1855
       jfeagle@skaarandfeagle.com


       Kris K. Skaar (Ga. Bar No. 649610)
       Justin T. Holcombe (Ga. Bar No.  552100)
       SKAAR & FEAGLE, LLP
       133 Mirramont Lake Dr.
       Woodstock, GA 30189
       Telephone: (770) 427-5600
       Facsimile: (404) 601-1855
       kskaar@skaarandfeagle.com
       jholcombe@skaarandfeagle.com


       Alexander H. Burke (admitted *pro hac vice*)
       BURKE LAW OFFICES, LLC
       155 N. Michigan Ave., Suite 9020
       Chicago, IL 60601
       Telephone: (312) 729-5288
       Facsimile: (312) 729-5289
       aburke@burkelawllc.com

       *Counsel for Plaintiff and the Class*

## L.R. 7.1(D) CERTIFICATION

I hereby certify that this filing has been prepared with one of the font and point selections approved by the Court in L.R. 5.1(C)—in this case, Times New Roman, 14-point font.

 /s/ James M. Feagle
One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2015, I filed the foregoing ***Plaintiff's Unopposed Motion and Incorporated Memorandum in Support of Final Approval of Class Action Settlement*** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following counsel of record:

> Frank M. Lowrey, IV
> BONDURANT MIXSON & ELMORE, LLP
> 1201 W. Peachtree St., N.W.
> 3900 One Atlantic Center
> Atlanta, GA 30309
> lowrey@bmelaw.com

A copy of the foregoing is also being provided to the following via U.S. Mail:

> William J. Cruse, Jr.
> 710 Cherokee Dr.
> Pasadena, TX 77506

 /s/ James M. Feagle
One of Plaintiff's Attorneys
